
RECEIVED
FEB 1 0 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| DARREN TYRONE SLOAN, ET AL. | CONSOLIDATED<br>CIVIL ACTION NO. 02-2176 |
| versus | JUDGE WALTER |
| WARDEN BURL CAIN, LOUISIANA<br>STATE PENITENTIARY | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Darren Sloan ("Petitioner") was convicted of second degree murder and sentenced to life imprisonment. After pursuing a direct appeal and a post-conviction application in the state courts, Petitioner filed this federal petition for habeas corpus relief. After reviewing the briefs and state court record, the court dismissed all of Petitioner's claims except for those based on ineffective assistance of counsel. See Docs. 21 and 27.

The principal ineffective assistance claim is that defense attorney Anthony Hollis failed to communicate to Petitioner a plea bargain offer that carried a 25 year sentence. Petitioner claims he would have accepted the offer and avoided a life sentence. The court appointed attorney Christopher Johnson to represent Petitioner in connection with the ineffective assistance claims, and an evidentiary hearing was held on January 17, 2006. For the reasons that follow, it is recommended that habeas relief be denied.

**Standard of Review**

Habeas relief shall not be granted with respect to any claim that was "adjudicated on the merits in State court proceedings" unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). When this statute applies, the federal court affords the state court's decision a significant degree of deference. Williams v. Taylor, 120 S.Ct. 1495 (2000). That level of deference is owed even when the state courts denied relief without a written opinion. The federal court will assume that the state court applied the proper Supreme Court precedent and determine whether the state court's decision was contrary to, or an objectively unreasonable application of, that precedent. Schaetzle v. Cockrell, 343 F.3d 440, 443 (5th Cir. 2003).

When, however, the state court has not adjudicated a claim on the merits, the federal court reviews the claim *de novo* rather than under the deferential standard set forth in Section 2254(d)(1). Salazar v. Dretke, 419 F.3d 384, 396 n. 19 (5th Cir. 2005). Whether a claim was adjudicated on the merits in state court turns on whether the court's disposition of the case was substantive or procedural. Salazar, 419 F.3d at 395.

Petitioner's original post-conviction application raised a number of issues, including claims that his attorney rendered ineffective assistance of counsel in a number of respects.

R. 839-64.[1] Petitioner later filed a supplemental memorandum (R. 894) and argued, for the first time, that attorney Hollis also rendered ineffective assistance of counsel when he failed to inform Petitioner that the prosecutor had offered a plea bargain by which Petitioner could plead guilty to manslaughter and be sentenced to 25 years in prison (thus avoiding trial for second degree murder and a mandatory life sentence if convicted).

Neither the prosecutor's brief (R. 923-28) nor the trial court's decision (R. 929-33) mentioned the claim stemming from the plea bargain offer. The trial court, citing Strickland v. Washington, 104 S.Ct. 2052 (1984) as the governing precedent, did review on the merits Petitioner's other ineffective assistance claims (failure to subpoena a witness; inadequate pretrial investigation; failure to object during voir dire; failure to question a juror about a friendship with the victim's family; and counsel's investigation by the bar association) and found them to lack merit. The appellate court denied a writ application with respect to those Strickland claims because Petitioner had not shown that the trial court committed error. R. 980. The Supreme Court of Louisiana denied a writ application without comment. R. 1019.

As mentioned above, the trial court did not address the plea bargain issue, and there is every appearance that the claim presented in the supplemental memorandum was simply overlooked. The appellate court expressly did not address the merits of the plea bargain issue because, the court found, the claim "did not appear to be presented to the trial court." R. 980. Petitioner pointed out in his application to the Supreme Court of Louisiana that the plea

---

[1] Citations to R.___ refer to pages in the state court record that was filed with the state's answer.

bargain issue had been included in the supplemental filing (R. 988), but the application was, without explanation, "Denied." R. 1019.

All of Petitioner's Strickland claims except those arising from the plea bargain offer were adjudicated on the merits in the state court proceedings. This court may not grant relief with respect to those claims unless the state court decision was an unreasonable application of Strickland. Williams, supra. Petitioner has not made any persuasive argument that he is entitled to relief on any of those claims under the demanding standard of Section 2254(d)(1).

Petitioner's focus, with respect to his Strickland issues, has been on counsel's alleged failure to communicate the plea bargain offer. The state courts' disposition of this claim did not rest on timeliness, procedural bar or other procedural grounds, but the claim was definitely not decided on the merits or for substantive reasons. Rather, the claim was simply overlooked or ignored by the state courts and not decided at all. There is, therefore, no state court adjudication on the merits to which deference may be afforded, so *de novo* review of the plea bargain issue appears to be appropriate. See Tatum v. Cockrell, 2001 WL 1516756 (N.D. Tex. 2001)(state court erroneously ignored issue; no adjudication on the merits).

**Failure to Communicate Plea Offer**

    **A.   Counsel Must Communicate Plea Offers**

The Sixth Amendment guarantees criminal defendants the right to an effective counsel. A defendant may be entitled to relief from his conviction if he can show that his counsel's performance fell below an objective standard of reasonableness. Strickland, 104

S.Ct. at 2064. "One of the most important duties of an attorney representing a criminal defendant is advising the defendant about whether he should plead guilty." U. S. v. Herrera, 412 F.3d 577, 580 (5th Cir. 2005). "In determining whether or not to plead guilty, the defendant should be made aware of the relevant circumstances and likely consequences so that he can make an intelligent choice." Teague v. Scott, 60 F.3d 1167, 1170 (5th Cir. 1995). For those reasons, the Fifth Circuit has agreed with several other courts that "the failure of trial counsel to inform the defendant about a government plea offer amounts to ineffective assistance of counsel." Id.

**B. The Plea Offer Was Not Communicated**

Petitioner's mother, Ernestine Bullock, testified at the hearing that she retained attorney Anthony Hollis in May 1995 to defend Petitioner from the second degree murder charge that went to trial in August 1996. Tr. 23-24.[2] Mr. Hollis admitted at the hearing that he was having substantial "professional problems" during and near the time he represented Petitioner. There was significant evidence presented at the hearing regarding how Mr. Hollis was, during 1995 and 1996, ineligible to practice law at various times because he failed to pay his bar association dues or failed to complete legal education requirements. The state appellate court held Hollis in contempt and fined him $100 plus costs after Hollis failed to file an appellate brief for Petitioner, despite an extension of time and a second deadline that included a warning of potential citation for contempt. Tr. 37-40.

---

[2] Citations to Tr.___ refer to pages in the transcript of the evidentiary hearing held in federal court on January 17, 2006.

Hollis was also disciplined in connection with his representation of other clients during the relevant time. Linda Watson and Velma Willis retained Hollis in July 1995. They filed complaints two months later alleging that Hollis failed to pursue their case and that they had been unable to speak to him, despite several phone calls and visits to his office. Hollis also failed to respond to the disciplinary committee's requests for information and a subpoena. The Supreme Court of Louisiana suspended Hollis from practice for one year, followed by one year of supervised probation. In re Hollis, 714 So.2d 693 (La. 1998).

Another client, Amer Early, who retained Hollis in February 1996 filed a complaint after Hollis allowed her federal civil action to be dismissed based on his failure to comply with discovery requests. The disciplinary committee charged him with neglect of legal matter, failure to communicate, and misrepresentations about the status of the case for a period of two years. The court ordered another one year of suspension, but the suspension was deferred, given the earlier discipline imposed for transgressions committed during the same time period. In re Hollis, 797 So.2d 663 (La. 2001).

Petitioner was also experiencing problems in federal court during this same time. He was found guilty of contempt of court in 1994 and sentenced to six months in prison, which was suspended, and supervised probation for two years with special condition that he submit to drug abuse treatment as directed by the probation office. Three revocation hearings were held in 1995. After the second hearing, Judge Walter revoked probation and placed Hollis on home confinement during evening and night hours. That status was ultimately revoked

and Hollis was sentenced to sixty days in custody. No evidence of the federal contempt proceedings was presented at the evidentiary hearing, but the court may take judicial notice of the record in U. S. v. Hollis, 94 MC 0035 (W.D. La.).

Petitioner was charged with second degree murder, which carries a mandatory life sentence. The prosecutor prepared a written plea offer dated July 22, 1996 (about a month before trial was to commence) that offered to allow Petitioner to plead guilty to manslaughter and receive a 25 year sentence. The offer added that after August 12 the offer would increase to 30 years and be good through August 16, but no deal would be accepted on the day of trial. R. 919. Counsel stipulated at the hearing that (1) the prosecutor tendered the written offer to Hollis and (2) a copy of the offer was found in Hollis's file. Tr. 5.

Petitioner testified that he did not learn of the plea offer until after his conviction was final and he was able to make a public records request for the prosecutor's file. He said he discovered the written offer in that file and, several months later, filed his supplemental post-conviction application. Tr. 75. He denied that Hollis or anyone else told him about the offer or provided him a copy until he received the prosecutor's file. Tr. 79. Petitioner's mother, who had hired Hollis and who often facilitated three-way telephone calls between herself, Hollis and the incarcerated Petitioner, testified that Hollis never conveyed to her that a 25 year manslaughter offer had been made. Tr. 61-66.

A review of Mr. Hollis's file found no letters, notes or other evidence that the plea offer was transmitted or communicated to Petitioner. Hollis testified that he was not surprised because "in many instances you communicate the offers to the individual at the

institution" during a sit-down session. Hollis said he "would probably have shown him (Petitioner) the letter" and discussed available options. Tr. 41. Hollis testified that he believed he would have communicated the offer and recommended that it be accepted, but he admitted he did not specifically recall communicating the offer to Petitioner or his mother. Tr. 46-47. Counsel for Petitioner established that Hollis and Petitioner did not appear in court together between the date of the offer and trial commencing, so there was no opportunity for communication of the offer during a court appearance. Tr. 45.

The undersigned finds, after considering and weighing the testimony and evidence relevant to this issue, that Petitioner has met his burden of showing that it is more probable than not that Mr. Hollis did not communicate the plea offer to Petitioner. Mr. Hollis had, at the relevant time, a terrible track record for communicating with his clients, responding to written requests or demands from bar officials, and even attending to the simple matters required to ensure his eligibility to practice law. The combination of that history, Hollis's lack of recollection of communicating the offer, the absence of any other evidence the offer was communicated, and the testimony from Petitioner and his mother suffice to meet Petitioner's burden on this point.

**C. Prejudice Was Not Established**

Petitioner has presented the plea offer claim throughout the proceedings as governed by Strickland, but his post-hearing brief urges the application of U. S. v. Cronic, 104 S.Ct. 2039 (1984), which affords relief without a showing of prejudice when a defendant has suffered a "complete denial of counsel." Petitioner cites no cases that have applied Cronic

in a similar setting, but several cases, such as the Fifth Circuit's decision in Teague, 60 F.3d at 1170, have analyzed the claim under Strickland, which does require a showing of prejudice.

A constructive denial of counsel, which permits application of Cronic, occurs in only a "very narrow spectrum of cases" where counsel's ineffectiveness is so egregious that the defendant was in effect denied any meaningful assistance. U. S. v. Griffin, 324 F.3d 330, 364 (5th Cir. 2003). That applies only when "counsel was not merely incompetent but inert, distinguishing shoddy representation from no representation at all." Id. "[B]ad lawyering, regardless of how bad, does not support the per se presumption of prejudice." Id.

This claim should be decided under the Strickland framework and its requirement of prejudice. If Cronic governed, the mere failure to communicate the offer would require some form of habeas relief. There could easily be situations where counsel failed to communicate an offer and there is no actual prejudice because, for example, the defendant learned of the offer from another source or the defendant would have rejected the offer. There is no indication in the law that Cronic should apply in a case such as this.

The prejudice issue usually arises in connection with a trial error and is said to exist only if there is a reasonable probability that, but for counsel's error, the result of the trial would have been different. Strickland, 104 S.Ct. at 2068. When a defendant claims that his attorney gave him bad advice that caused him to wrongfully enter a guilty plea, prejudice is shown if there is a reasonable probability that, were it not for counsel's errors, the defendant would not have pled guilty and would have proceeded to trial. Hill v. Lockhart, 106 S.Ct.

366 (1985). In this case, Petitioner claims that if his counsel had not committed the error, he would have pleaded guilty. It appears, therefore, that the appropriate test for prejudice is whether there is a reasonable likelihood that Petitioner would have accepted the 25-year plea offer if Mr. Hollis had communicated it to him. See Teague, 60 F.3d at 1171-72 (petitioner's statement that he would have taken the plea offer into serious consideration had he been properly advised of his maximum sentence exposure was sufficient evidence of prejudice to require a hearing). See also Aeid v. Bennett, 296 F.3d 58, 60-63 (2d Cir. 2002) (citing cases that hold prejudice requires a reasonable probability that the defendant would have pled guilty if not for counsel's poor sentencing advice). The state cites cases which require, at least to get a hearing, some objective evidence beyond the defendant's own assertion that he would have accepted the plea offer. There is no indication the Fifth Circuit has adopted such a rule, and no such additional requirement will be made of Petitioner.

A summary of the evidence against Petitioner is helpful in assessing prejudice. The investigation of Petitioner began after Stephanie Walker reported to her high school principal that she believed her boyfriend, Petitioner, may have committed a murder. The principal contacted the police, and Stephanie told detectives that she had seen a body in the trunk of Petitioner's car and that Petitioner later told her that he killed the victim and disposed of the body. Stephanie said that another person, known to her only as Roderick, was also involved.

The officers found a missing persons report for Larry Conner, who had been missing since the very day Stephanie said she saw the body in Petitioner's car trunk. Petitioner and Roderick were arrested on outstanding warrants for other crimes. Roderick led officers to

the body of Larry Conner and implicated Petitioner in the murder. Roderick and Stephanie said that Petitioner had been in a shed outside Petitioner's home when he shot Conner, rolled the body in a carpet, loaded the body in Petitioner's car and dumped the body where police later found it. Carpet fibers from the shed matched fibers found inside Petitioner's car, and human blood was also found inside the car. More detailed descriptions of the evidence can be found in the original Report and Recommendation (Doc. 21) and in State v. Sloan, 701 So.2d 995 (La. App. 2d Cir. 1997), writ denied, 709 So.2d 731 (La. 1998).

Attorney Hollis testified that Petitioner had maintained his innocence before trial. Tr. 54. Hollis said he did not think Petitioner appreciated the strength of the state's case against him. Hollis added, "I'm not sure that he actually believed that Mr. [Roderick] Simmons or the girl [Stephanie Walker] would ultimately testify, and so with that I think that he had a belief that the State wouldn't be able to prove its case." Tr. 55-56. Hollis agreed that it would be "very difficult" to convince a client to accept a 25 year prison term when the client thought that the prosecution's witnesses would not testify. Tr. 56. He added that Petitioner was not easy to reason with, had a "fixation on winning the case" that Hollis believed was unreasonable, and that if Petitioner had a "belief in his mind, that will prevail." Tr. 57.

Petitioner, on the other hand, testified that he would have taken the 25 year offer if it had been extended to him. Tr. 75. Petitioner continues to this day to maintain his innocence, but he said he would have taken the 25 year sentence so that he (who was 24 at the time of trial) would have a chance to get out of prison and be with his children. He also said that he had "some problems" with Hollis and "didn't really feel comfortable with him."

Tr. 76-77. With respect to the strength of the case against him, Petitioner testified that there "was no evidence on me" and that he had not been worried about the testimony from Stephanie Walker and Roderick Simmons. Tr. 82-83. When asked if he thought the state had enough evidence to convict him, Petitioner testified: "I didn't think they – I would get convicted." Tr. 84.

Petitioner's claims that he would have accepted the 25 year sentence are at odds with (1) his testimony that he thought he would be acquitted and (2) his swift rejection of a 35 year offer that was made on the morning of trial. Petitioner testified that, in the courtroom just before trial started, Mr. Hollis suggested to the prosecutor a plea with a 10 year sentence. The prosecutor started laughing and said, "I tell you what, 35 years." Tr. 86. Petitioner testified that Hollis made the 10 year offer without consulting him, and they did not discuss the rejection of the 35 year offer. Petitioner said he heard the prosecutor make the offer, began counting up how old he would be at the end of the sentence and, before he could even finish the math told Mr. Hollis, "I'm going to trial." Tr. 90-93. Petitioner said he and Mr. Hollis had no other discussions about the possibility of a guilty plea. According to Petitioner, Hollis had told him that it looked like they could beat the case, so Petitioner said, "Well, I'm going to ride with you." Tr. 92.

Also undermining Petitioner's claim that he would have accepted the 25 year offer are statements in his written submissions that indicate a lesser degree of certainty. For example, he wrote in his supplemental post-conviction application, which first raised the issue, that there was a "grave probability" that he would have accepted the offer. In another filing,

Petitioner wrote that he would have accepted the offer with a Crosby plea, which is a conditional plea that reserves the right to appeal a suppression or other pretrial ruling. Tr. 85. On the other hand, Petitioner represented in his reply brief to this court that he "would have accepted the offer in an effort to prevent receiving a life sentence upon conviction." Doc. 19, p. 18. These facts do not weigh heavily in the assessment of the evidence, but they do show that Petitioner has not always been so willing to immediately accept the 25 year offer as he indicated at the hearing.

There is, as explained in the State's post-hearing brief, substantial doubt as to whether Petitioner would have been eligible for good time (and at what rate) if he had accepted the 25 or 35 year plea offers. Petitioner indicated at the hearing that he believed, right or wrong, that he might only serve half of such a sentence. Tr. 82. That would mean that Petitioner's perceived difference between the 35 and 25 year offers was not 10 years, but a mere 5 years. This weighs against Petitioner's claim that he would have accepted the 25 year offer when he rejected the 35 year offer without hesitation, counteroffer or discussion. The court does not place significant weight on this aspect of the case because of the uncertainty about the actual eligibility for good time and what role Petitioner believed at the time that good time would play in the calculation of his sentence.

Other evidence on the issue came from Petitioner's mother, Ms. Bullock, who testified that she was "sure" Petitioner would have taken the 25 year sentence because it was "a lot lesser than life." Tr. 64. Ms. Bullock was apparently not aware of the 35 year offer that had been rejected. She was asked if Petitioner would have taken a 35 year offer if it had been

made, and she answered swiftly and confidently: "Yes, ma'am." Tr. 66. She was obviously incorrect about Petitioner's willingness to accept the 35 year offer, so her testimony that he would have accepted the 25 year offer carries significantly less weight than it might otherwise.

The court has carefully assessed the relative credibility of Mr. Hollis, Ms. Bullock and Petitioner, in light of the overall facts and circumstances. In the end, the undersigned does not find credible Petitioner's testimony that he would have accepted the 25 year offer. When Petitioner described the plea discussion that occurred on the morning of trial, he depicted himself as brashly rejecting the 35 year offer without discussion with his attorney or suggestions of a counteroffer. Rather, Petitioner insisted he was "going to trial." The undersigned finds that the combination of that evidence, Petitioner's belief that he was going to be acquitted, and the other facts discussed above, weigh heavily against finding Petitioner's claim credible. Accordingly, the undersigned does not find that there is a reasonable probability that Petitioner would have accepted the 25 year offer if it had been communicated to him.

**Conclusion**

Petitioner's trial counsel may have rendered deficient performance, but the attorney who was appointed to represent Petitioner in this hearing did an excellent job of thoroughly investigating the facts surrounding the plea offers and presenting the evidence to the court. The court thanks Mr. Johnson, who represented Petitioner, and Ms. Estopinal, who represented the State, for their cooperation with each other and the court and for their

thorough and professional presentations at the hearing. In the end, the preponderance of the evidence showed that attorney Hollis did not communicate to Petitioner the 25 year offer but there is not a reasonable likelihood that Petitioner would have accepted the offer had he received it.

The recommended conclusion obviates the need to address the timeliness defense and equitable tolling response that are described in the original Report and Recommendation and that were discussed at the hearing and in the post-hearing briefs. If a reviewing judge or court should determine that Petitioner is entitled to relief on the merits of any claim, the timeliness defense will have to be decided.

Accordingly,

**IT IS RECOMMENDED** that all remaining claims in the petition for writ of habeas corpus be **DENIED** and that Petitioner's complaint be **DISMISSED WITH PREJUDICE.**

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 10th day of February, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE

cc: Judge Walter